Gary S. Lincenberg - State Bar No. 123058
  glincenberg@birdmarella.com
Thomas V. Reichert - State Bar No. 171299
  treichert@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant
Todd Michael Ficeto

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:13-CR-00183 VAP |
| Plaintiff, | **Declaration of Thomas V. Reichert** |
| vs. | Date:  March 23, 2020<br>Time:  TBD<br>Crtrm.: 8A |
| FLORIAN WILHELM JURGEN HOMM, TODD MICHAEL FICETO, COLIN HEATHERINGTON, and CRAIG HEATHERINGTON, | |
| Defendants. | |

3632759.1

**DECLARATION OF THOMAS V. REICHERT**

I, Thomas V. Reichert, declare as follows:

1. I am an active member of the Bar of the State of California and a Principal with Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, A Professional Corporation, attorneys of record for Defendant Todd Michael Ficeto in this action. I make this declaration in support of Sentencing Memorandum of Todd Ficeto. Except for those matters stated on information and belief, I make this declaration based upon personal knowledge and, if called upon to do so, I could and would so testify.

2. I attach as Exhibit 1 hereto a true and correct copy a certified translation of the September 25, 2019 decision of the Swiss Tribunal handling the indictment of Florian Homm, among others.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I executed this declaration on February 3, 2020, at Los Angeles, California.

Thomas V. Reichert

# EXHIBIT 1


3000 Marcus Ave
Suite 1E6
Lake Success, NY 11042
www.parkeval.com

EINGEGANGEN 26 Sept. 2019

**Bundesstrafgericht**
**Federal Criminal Court**
**Federal Criminal Court**
**Federal Criminal Court**

Case number: SK.2019.12

## Decision of September 25th, 2019
## Criminal Court

**Composition**

Federal criminal judges Nathalie Zufferey, presiding judge, Jean-Luc Bacher and Stephan Zenger, clerk Joëlle Fontana

**Parties**

**CONFEDERATION PUBLIC PROSECUTOR**, represented by the Federal Prosecutor Mrs Graziella De Falco Haldemann, route de Chavannes 31, PO BOX, 1001 Lausanne,

and

the plaintiffs :

1. **ABSOLUTE ACTIVIST VALUE MASTER FUND LTD,**
2. **ABSOLUTE ACTIVIST VALUE FUND LTD,**
3. **ABSOLUTE ACTIVIST VALUE FUND LP,**
4. **ABSOLUTE EAST WEST FUND LTD,**
5. **ABSOLUTE EAST WEST FUND LP,**
6. **ABSOLUTE EAST WEST MASTER FUND LTD,**
7. **ABSOLUTE EUROPEAN CATALYST FUND LTD,**
8. **ABSOLUTE GERMANY FUND LTD,**
9. **ABSOLUTE INDIA FUND LTD,**
10. **ABSOLUTE OCTANE FUND LTD,**
11. **ABSOLUTE OCTANE FUND LP,**

Case 2:15-cr-00123-VAP-MRW Document 265-17 Filed 02/09/20 Page 5 of 20 Page ID #:5174

PARK EVALUATIONS

3000 Marcus Ave
Suite 1E6
Lake Success, NY 11042
www.parkeval.com

-2

12. **ABSOLUTE OCTANE MASTER FUND LTD,**
13. **ABSOLUTE RETURN EUROPE FUND LTD,**

Represented by Mr. Jean-Marc Carnicé, attorney, rue Jacques-Balmat 5, PO BOX 5839 1211 Geneva 11,

**Versus**

1. **Florian HOMM,** born on October 7th, 1959, residing at Wilhelm-Bonn-Strasse 9, 61476 Kronberg im Taunus, Germany, represented by Mr. Marc Engler, attorney, Lbwenstrasse 2, PO BOX 2121, 8022 Zurich,

2. **Urs MEISTERHANS,** born on November 10th, 1960, residing at Saumacherstrasse 14, PO BOX, 8307 Effretikon, represented by Mr. Daniel U. Walder, court appointed attorney, Freiestrasse 204, 8032 Zurich,

3. **Marcel EICHMANN,** born on September 28th, 1966, residing at Ellikonerstrasse 43, 8500 Frauenfeld, represented by Mr. Lucius Richard Blattner, attorney, Selnaustrasse 6, 8001 Zurich,

4. **Pascal FREI,** born on November 26th, 1979, residing at Langdorfstrasse 15, 8500 Frauenfeld, represented by Mr. Peter Bettoni, attorney, Hermann Giitz-Strasse 21, PO BOX 2290, 8401 Winterthur,

As well as requested third parties:

1. **Susan DEVINE,** residing at 2231 Forrest Lane, 34102 Naples, FL, USA, represented by Mr. Alec Reymond, @lex attorneys, rue de Contamines 6, 1206 Geneva,

PARK
EVALUATIONS

3000 Marcus Ave
Suite 1E6
Lake Success, NY 11042
www.parkeval.com

-3-

**2.     BREK STIFTUNG**, Landstrasse 151, 9494 Schaan, Liechtenstein

**3.     HOSIFA STIFTUNG**, Liechtenstein

**4.     MALON CONSULTING AG**, c/o Footuro Betriebs AG, Schulhaustrasse 14, 8002 Zurich,

**5.     VATULELE SL**,

represented by Mr. Jan Berchtold, Bachmann Rechtsanwâlte AG, attorney, PO BOX, 8027 Zurich

Purpose     Referral of indictment (art. 329 CCP)

PARK EVALUATIONS

3000 Marcus Ave.
Suite 1E6
Lake Success, NY 11042
www.parkeval.com

-4-

**Facts:**

On February 20th, 2019, the Federal Public Prosecutor's Office (hereinafter MPC) transmitted to the Criminal Court of the Federal Criminal Court (hereinafter: the court) an indictment against Florian Homm, Urs Meisterhans, Marcel Eichmann and Pascal Frei for offences of fraud, unfair management, breach of trust, money laundering, forgery of titles, fraudulent bankruptcy, fraudulently obtaining a false statement and breach of the obligation to disclose.

**The Court examines the legal grounds:**

**1.**

**1.1** In Content of Art. 329 §. 1 to 3 of the Swiss code of Criminal Procedure of October 5th, 2007 (CCP; RS 312.0), the Director of procedure examines whether the indictment and the case are properly written, whether the conditions for the opening of public proceedings are met and whether there are valid grounds not to proceed. If it appears after that examination or later in the proceedings that a judgment on the merits cannot yet be given, the court shall suspend the proceedings. If necessary, he refers the charges to the public prosecutor's office for addition or correction. The court shall decide whether a suspended case remains pending before it.

The charges preliminary examination under art. 329 of the CCP is a provisional examination limited to formal matters and summary in nature. Doing this, clearly insufficient charges from a formal or material point of view leading to proceedings before the court should be avoided. This is not about recognizing the charges as true (ATF 141 IV 20 consid. 1.5.4, JdT 2015 IV 191, Federal Court decision 6B 676/2013 of April 28th, 2014 consid. 3.6.4 and quoted refs.)

**1.2** An offence may only be tried if the public prosecutor has filed with the competent court an indictment against a specific person on the basis of precisely described facts (art. 1 CCP). Dedicated to Article 9 of the CCP, the accusatory principle also derives from Art. 29 §. 2 Cst, 32 §. 2 Cst. and 6 §. 1 and 3 let. a and b ECHR. According to this principle, the indictment defines the purpose of the trial (delimitation function). It should describe the offences alleged against the defendant in a sufficiently precise manner to allow him or her to assess, subjectively and objectively, the charges against him or her (art. 325 of the CCP; ATF 141 IV 132 consid. 3.4.1 p. 142 s.).

Case 2:13-cr-00283-KSH-FBM Document 205-78 Filed 02/03/19 Page 8 of 20 PageID: 2337

![Park Evaluations logo]
3000 Marcus Ave.
Suite 1E6
Lake Success, NY 11042
www.parkeval.com

-5-

The accusatory principle also aims to protect the right to an effective defense and the right to be heard (information function). Therefore the content of the indictment need to enable the defendant to explain himself or herself and prepare his or her defense effectively (ATF 141 IV 132 consid. 3.4.1 p. 142 s.; 133 IV 235 consid. 6.2 p. 244 s. and quoted references). Articles 324 ss of CCP sets the indictment procedure, in particular the strict content of the indictment. According to Article 325 of the CCP, the indictment specifies the actions alleged against the defendant, the place, date and time they were perpetrated, as well as their consequences and the perpetrator modus operandi (let. f); the offences committed and the applicable legal provisions in the public prosecutor's office opinion (let. g.) In other words, the indictment needs to contain the facts which, in the opinion of the public prosecutor, correspond to all the constituent elements of the offence alleged against the defendant (federal court decision 6B_668/2014 of December 22nd, 2017 consid. 6.1).

1.3  A decision to suspend and refer the case for further investigation by the court of first instance pursuant to Art. 329 §. 2 CCP is a judgment concerning the progress and development of the proceedings. Consequently, an action is brought against him or her only in the event of an irreparable damage (ATF 143 IV 175 consid. 2.2).

2.  After a summary examination, the court finds that the indictment does not meet the requirements pursuant to the accusatory principle on the following matters.

3.  Item A. 1 of the indictment

3.1  The MPC reproaches Florian Homm, "in the course of his position as Chief Investment Officer (C10) and agent of the investment fund management company ABSOLUTE CAPITAL MANAGEMENT HOLDINGS Ltd (hereinafter ACMH)", with having cleverly misled ACMH and eight investment funds, called "Fonds Absolute", the latter having disposed of rights or property and suffered specific damages (p. 8). Since there are several deceived persons, there are several separate fraud charges, especially since it seems that one of the deceived person, ACMH, has, at first in any case, benefited from the alleged fraud committed to the detriment of the other people deceived, Fonds Absolute. In these circumstances, the requirements deriving from the accusatory principle request the prosecution to formulate separate charges for each offence committed, describing in a precise and concise manner, each time, the facts which, in its view, achieve the objective and subjective constituent elements of the offence concerned, if necessary by including them under separate headings.

In this instance, although some of the constituent elements of the fraud offences, namely what appears to constitute the deceived people disposal of rights or property (even if this is not


expressly mentioned as such) and the damages are specifically described in a specific manner, on the one hand, the "Fonds Absolute" *(y. infra* consid. 3.4) and, on the other hand, ACMH and both of them appear under separate chapters of item A. 1.5 (entitled "Damages"), this is not the case with the other constituent elements such as deceit, cunning, error, the causal link between these different constituent elements, the enrichment intention and purpose. It lies with the prosecution to describe clearly and precisely which fact is, in its view, a constituent element of which offence. This, so that, primarily, the defendant knows exactly what he or she is accused of, when, on what grounds and in what specific circumstances, and that he or she may prepare his or her defense accordingly.

Moreover, it is to be considered that the more complex an indictment is, the more precisely the facts need to be described and the parts played by each of the stake holders need to be explained (perpetrator, possible participant, aggrieved people; in the case of legal persons, natural persons having concretely acted).

**3.2**  The reproaches presented by the MPC against Florian Homm on the grounds of fraud are such as he was acting as ACMH's CIO, respectively responsible for managing the assets of Fonds Absolute, responsibilities he had from November 24th, 2005 ("Florian HOMM was appointed by ACMH, within the framework of a Service Agreement dated November 24th, 2005, C10, respectively responsible for managing the assets of the Fonds Absolute", p.9) and until his resignation from ACMH on September 18th, 2007.

However, with regard to the actions of deception alleged against Florian Homme (A.1.3), some of them were committed before November 24th, 2005, or even after September 18th, 2007 *(y. infra, consid. 3.3.1)*. Similarly, on the issue of damages, the MPC states that the Fonds Absolute disposed of rights or property and suffered damages between 2004 and September 2007 and ACMH between September 2005 and September 2007 (A. 1.5).

These inconsistencies prevent the clear delimitation of the prosecution and the understanding of the reproaches, especially for the defendant and the defense.

Case 2:13-cr-00183-JAP-MDM Document 285-178 Filed 02/09/20 Page 10 of 20 PageID #: 25139

PARK EVALUATIONS

3000 Marcus Ave
Suite 1E6
Lake Success, NY 11042
www.parkeval.com

-7

3.3   On the issue of deception, Florian Homme is accused of having committed two types of actions: fraudulent investments in US Penny Stocks and tampering operations.

3.3.1  Regarding the fraudulent investments, the MPC reproaches Florian Homm with having, "in his capacity as ACMH CIO, respectively responsible for Fonds Absolute investments, [...] concluded, from September 2004 to September 2007, to the detriment of the pecuniary interests of the Fonds Absolute, several transactions relating to the purchase or subscription of the aforementioned U.S. *Penny Stocks* shares" (p. 21).

The word "several", which is at least imprecise, does not help knowing how many transactions Florian Homm concluded exactly in that capacity during the relevant period. The following developments only add to the confusion as to the number of transactions and the period during which Florian Homm would have acted. The MPC presents a table (p. 22 and p. 23) intended to show the origin of Florian Homm's gains from HWM, which the MPC describes as illicit, in which 32 transactions involving U.S. Penny Stocks having taken place between August 24th, 2005 and March 24th, 2008, thus a longer period than that for which the allegations (and the one concerned with the damages) are made. The MPC then describes the concrete part played by Florian Homm, for ACMH, but only on the occasion of eight (out of the 32) transactions that took place between November 29th, 2005 and July 31st, 2007 (a shorter period than the one mentioned in the preamble).

**3.3.2**   With regard to the tampering operations, the MPC describes eleven such operations "in connection with" the 32 transactions in the table on pages 22 and 23, which took place between September 19th, 2005 and August 31st, 2007, allegedly carried out "by Florian Homm and his associates", without it being specified who played what part in each of the relevant operations. In addition, the statement "Such tampering operations continued throughout the months of June, July and August 2007" (p.30) casts doubt on the completeness of the complaints submitted.

3.3.3   The accusatory principle implies that the defendant knows exactly the facts he is accused of, that they are described in a clear, concise and exhaustive manner, avoiding any risk of confusion, so that he may prepare his defense effectively. But, this is not the case here. For all practical purposes, it should be recalled that an indictment is not supposed to describe exemplary charges.

PARK EVALUATIONS

3000 Marcus Ave
Suite 1E6
Lake Success, NY 11042
www.parkeval.com

-8

3.4  In the introductory description of the fraud, the MPC states that Florian Homm cleverly misled eight Fonds Absolute under his management (p. 8). In Chapter A.1.2, dealing with contractual obligations, the MPC states that on specific dates, ACMH entered into *"Investment Management Agreements"* with 18 investment funds" called "Fonds Absolute" (p. 15 et seq.). Among these 18 funds, the CPM identifies, by way of dashes, eight "groups" of funds. In each group, the first fund mentioned by the MPC is referred to by an acronym. Thus, eight funds are designated by the acronyms ARE, FAC, AGF, AEW, AOF, ALC, AAV and AIF, without any explanation for them. In the remainder of the indictment, when it does not deal with funds without distinction (the "Fonds Absolute"), the MPC refers to each fund in particular using one of the above-mentioned acronyms. For example, in the chapter on deception (A.1.3), in the table on pages 22 and 23, whenever a fund is named as the purchaser of U.S. Penny Stocks, it is done using one of the eight acronyms; similarly, on page 32, it is by means of the relevant acronyms that the MPC lists seven Fonds Absolute that invested in U.S. Penny Stocks.

It therefore appears that, according to the MPC, there are a total of eight Fonds Absolute. However, it does not specify whether it means those designated by an acronym or the eight distinct groups, and if any, on what basis and why it created these groups.

In addition to this, there is the fact the thirteen out of the (18) Fonds Absolute brought actions and submitted findings, which appeared to be the same as those made by the MPC in respect of the damages suffered by the "Fonds Absolute".

The confusion and lack of precision of the indictment with regard to the Fonds Absolute prevents the defense, the parties in general and the court from effectively preparing the trial.

3.5  The MPC presents, repeatedly, amounts, always different, invested by the Fonds Absolute in the U.S. Penny Stocks. On page 21, the amount that the Fonds Absolute would have invested in the US Penny Stocks reaches USD 126,100,000 (which is the total amounts mentioned for each type of Penny Stocks), from September 2004 to September 2007. On page 32, as of August 31st, 2007, the amount invested by the Fonds Absolute in US Penny Stocks would reach a total of EUR 389 million. On page 41, on the chapter of damages, the Fonds Absolute would have invested, from 2004 to September 2007, USD 229,408,798 in US Penny Stocks. Notwithstanding the issue of currency exchange, these are three entirely different amounts.

Case 2:15-cr-00183-JAD-PAL Document 265-178 Filed 02/09/20 Page 12 of 20 Page ID #:5181
Case 1:13-cr-00182-VSB Document 178 Filed 12/03/19 Page 12 of 26 PageID #:1351

PARK EVALUATIONS

3000 Marcus Ave
Suite 1E6
Lake Success, NY 11042
www.parkeval.com

-9-

**4.** Item A.2 of the indictment

**4.1** As regards, first of all, the alleged actions on the grounds of the aggravated unfair management offense, the following should be noted:

**4.1.1** According to the MPC, the "actions Florian HOMM is accused of and described in paragraph 1 above also constitute an aggravated unfair management within the meaning of art. 158 Ch. 1, respectively Ch. 2 CP, to the detriment of ACMH and the Fonds Absolute, in so far as Florian HOMM has committed them in the context of his position as ACMH CIO, as well as the specific management powers that had been entrusted to him over the Fonds Absolute". It then described the position of Florian Homm as manager of the Fonds Absolute and ACMH (A.2.1). Under the heading "Breach of his management duty" (A.2.2), the MPC explains that Florian Homm breached "all the duties inherent to his position as manager and all the rules, whether legal or contractual, in matters of wealth management". Then there are some additions relating to rules that Florian Homm would have also ignored.

This is contrary to the requirements deriving from the accusatory principle defined above in several respects.

**4.1.2** First of all, regarding the general reference to the actions described in item A.1, it is not for either the defense or the court to select or sort out the alleged actions of fraud (or, as discussed above, the charges) to identify those that would be likely to constitute one or in this case several offenses of aggravated unfair management. The constituent elements of fraud and aggravated unfair management are not identical. It lies with the prosecution to describe in a clear and concise manner, for each alleged offence, the specific facts which, in its view, are specific constituent elements of the offense. But, this is not the case here.

**4.1.3** Secondly, the MPC accuses Florian Homm of having committed several offences of aggravated unfair management, one committed to the detriment of ACMH and one, or several others, to the detriment of the Fonds Absolute. Indeed, it seems that not all the Fonds Absolute had the same investment purposes: "Florian HOMM did not achieve the finds investment purposes

As these inaccuracies prevent from achieving a clear picture of the situation, the prosecution is in violation of the accusatory principle.

PARK EVALUATIONS

3000 Marcus Ave
Suite 1E6
Lake Success, NY 11042
www.parkeval.com

-10-

(*investment purpose* chapter*),* most of which indicated that they wanted to invest mainly in the European market". Since, in any case, two different aggrieved persons are concerned, it lies with the MPC to describe precisely the facts which, in its view, are the objective and subjective constituent elements of each offence of aggravated unfair management, setting out in particular the content and extent of the various management duties of the defendant towards each aggrieved person and - indicating in what way each of his legal and contractual duties has been breached. Using words such as "most" and "essentially" does not meet the precision requirements pursuant to the accusatory principle.

**4.1.4** Thirdly, as the MPC complains of aggravated unfair management "within the meaning of Art. 158 Ch. 1, respectively Ch. 2 CP", it is for them to describe precisely the facts which, in its view, are the constituent elements of each of the two variants of the offence, for each characteristic offence.

**4.2** With regard to the subsidiary complaint of an aggravated breach of trust to the detriment of the Fonds Absolute of which Florian Homm is alleged to have been guilty, within the meaning of Art. 138 Ch. 1 and 2 CP, it also consists of a reference to the facts described under item A.1. of the indictment, to which is added a paragraph in the middle of the chapter dedicated to the breach of management duty in the context of the unfair management (A.2.2. 3rd paragraph, p. 53). The considerations set out above *(see supra* consid. 4.1), also apply with regard to this charge, admittedly subsidiary, with even more reason as ACMH is not concerned by this charge, but only that the Fonds Absolute are. This implies a more specific delimitation of the facts by the prosecution.

**4.3** Finally, the above considerations relating to item A.1 of the indictment also apply in respect of item A.2 *(see Supra* consid. 3).

**5.** The primary purpose of the prosecution's delimitation and information functions is to ensure that the defendant knows exactly what he or she is accused of having committed, both objectively and subjectively, and is able to prepare his or her defense accordingly. The purpose of the final hearing of the defendant is first to record in writing, in a concise and clear form, the felonies which the defendant is accused of and the defendant's behavior *(in* Message of the Federal Council on the unification of the law of Criminal Procedure of December 21st, 2005, FF 2006 1057, p.1253). In the present case, it should be noted that in the final hearing of Florian Homm, the questions concerning the facts relating to the charges of fraud, unfair management and breach of trust are dealt with under a common chapter, without any subsequent distinction

PARK
EVALUATIONS

3000 Marcus Ave
Suite 1E6
Lake Success, NY 11042
www.parkeval.com

-11-

between the facts constituting each of those three offences. Accordingly, the requirements of precision in the indictment for each of these three offences are all the more important.

6.  The PMC states that the facts on which the charges are based are also being prosecuted in the United States, stating that "the offence of security fraud prosecuted by the American criminal authorities is, according to the principle of abstract double criminality, comparable in Swiss law to that of fraud within the meaning of Art. 146 of the Criminal Code, which is a felony within the meaning of Art. 10 al. 2 PC sufficient to constitute the offence prior to money laundering" (p. 12). As for deception, the MPC states that "these tampering operations on U.S. *Penny Stocks*, respectively on the NAV *[Net Asset Value, or* inventory net value] of the Fonds Absolute, were held as acts of fraud by U.S. authorities in their indictment *(First Superseding Indictment)* filed on December 2nd, 2015 against Florian HOMM, Todd FICETO, Colin and Craig HEATHERINGTON" (p.34).

    In view of the foregoing considerations and the two extracts from the above-mentioned indictment, in the event that, in his view, some of the facts of the indictment should be examined pursuant to Art. 305$^{bis}$ Ch. 3 PC, the MPC is invited to state this clearly and to describe the facts concerned precisely.

7.  Items A.4.2 and B.2.1 of the indictment

    With regard to these allegations of fraud in the titles, the indictment is unclear as to whether the respective allegations concern the use of the false passport in the name of Colin Trainor or the use of one or several copies of the false passport in the name of Colin Trainor.

    It should also be noted that in item A.4.2 the MPC mentions that Urs Meisterhans gave the concerned banks a copy of the Irish passport in the name of Colin Trainor, on the instructions of Florian Homm, whereas in item B.2.1 Urs Meisterhans is not accused of having acted on the instructions of Florian Homm.

    Such inaccuracies prevent the concerned defendants and the court from clearly delineating the charges stated and, consequently, from effectively preparing the defense and the trial.

PARK EVALUATIONS

3000 Marcus Ave
Suite 1E6
Lake Success, NY 11042
www.parkeval.com

-12-

**8.** Item B.2.2.2 of the indictment

**8.1** With regard to the 25 allegations of forgery in the titles listed under this figure, the MPC accuses Urs Meisterhans "of having, in their capacity as manager, director, partner and asset manager, at SINITUS AG, in Küsnacht, between May 2003 and January 2013 at least, created and made use, in connection with the opening of the banking relations mentioned below, of the following forms A, designating a third party as having economic rights in relation to transactions carried out on behalf of Florian HOMM in particular" (p. 173). The following is a list of 23 items, listing 25 forms A and T, their respective dates of execution, as well as, in any case, the time of the opening of the relevant banking relations and the designation of the economic beneficiaries appearing in said forms.

The general complaint concerns the creation and use, "in connection with the opening of banking relations", "in connection with transactions carried out on behalf of Florian Homm, in particular"; such a statement is misleading in that it contains two distinct hypotheses, which are not formulated in an alternative manner.

Some of the forms in the list drawn up by the MPC were also drawn up after the opening of the banking relations (item #2 [$2^e$ form A], 5, 8, 12, 13, 14, 22 and 23).

**8.2** In addition, being aware that the business relations between Urs Meisterhans and Florian started, according to the indictment, in May 2006 (p. 55 and p. 125), the prosecution does not specify how the forms drawn up before that date were false at the time they were drawn up (# 2, 3, 5, 7, 10, 11, 14 and 18).

The absence of a reason why a form constitutes, in the opinion of the MPC, a forgery, if any, at a given time, is almost systematic.

**8.3** In order to comply with the accusatory principle, the MPC is required to clearly and precisely describe the facts which, from their point of view, are the constituent elements of the offence of forgery in the titles and on what grounds, for each specific complaint, in order to enable the parties and the court to prepare effectively the trial.

**9.** The indictment of February 20th, 2019 contains more than 650 charges against four defendants, for acts committed in the course of a period of about ten years.



Case 1:15-cr-00133-JSR Document 178 Filed 02/09/20 Page 16 of 20 PageID #: 5305
Case 2:13-cr-00133-VAP-MRW Document 235-178 Filed 02/09/20 Page 16 of 20 Page ID #:5305

3000 Marcus Ave
Suite 1E6
Lake Success, NY 11042
www.parkeval.com

-13-

The case file consists of more than 1,000 folders of evidence (174 main evidence and 749 appendices, plus 151 folders containing documents from searches).

In a letter dated February 20th, 2019, sent separately from the indictment, the MPC states that "the facts set out in the indictment are based on the entire file and in particular on the following elements". This is followed by a list of 17 documents (for some of them quoted twice), including the final hearings of the four defendants, two reports from the Federal Judicial Police and nine of the twelve financial expert reports. For the majority of them, the documents are several hundred pages long, each with a very large number of appendices. The MPC does not, however, specify which documents relate to which charges. Such a manner of proceeding does not allow for immediate knowledge of the relevant evidence (see decision of the Criminal Court of the Federal Criminal Court SK.2019.of May 10th, 2019 consid. 2.3 e 3 and quoted ref.)

With regard to money-laundering offences, in the 46 tables attached to the indictment, references to specific bank documents are mentioned for some transactions. Reference is also made to one or more of the above-mentioned financial analysis reports, which consist of several hundred pages and appendices. There again, however, in many cases only the first page of said reports is mentioned. This makes it difficult to easily understand how, for example, the percentages of money from a criminal origin mentioned for each of the alleged operations were calculated.

With regard to all the other charges, namely those of professional fraud, aggravated unfair management, aggravated breach of trust, forgery of titles, fraudulently obtaining a false statement, fraudulent bankruptcy and breach of the obligation to disclose, no specific reference to documents in the file is made in the indictment.

In view of the diversity, number and complexity of the offences involved, in order to facilitate the examination of the prosecution and to enable the parties and the court to prepare effectively the trial, the MPC is invited to state, in the body of the text or in footnotes, as precisely as possible, for each charge, the references to the relevant topical documents, both of the hearings and reports and of their appendices, giving the original section number of the acts.

-14-

**10.** The description of the alleged acts in items A.1, A.2, A.4.2, B.2.1 and B.2.2.2 are a breach to the accusatory principle. The prosecution is referred to these items for additions and/or amendments.

**10.1** In view of the grounds for referral in respect of items A.1 and A.2, which in the view of the MPC include the pre-money laundering offences alleged in items A.3, B.1, C.1 and D.1, the latter are also likely to be subject to additions and/or amendments; the prosecution needs therefore be referred to these points.

**10.2** Referring the case back to the MPC means that the proceedings are suspended. In order to allow the said authority to proceed, the MPC is returned the proceedings in the case and the case suspended does not remain pending before the Court (art. 329 §. 3 CCP).

**11.** This decision is without cost (art. 421 §. 2 let. a CCP) and no costs are awarded.


**PARK EVALUATIONS**

3000 Marcus Ave
Suite 1E6
Lake Success, NY 11042
www.parkeval.com

-15-

**On these grounds, the court rules:**

1. SK.2019.12 procedure is suspended.

2. The case is referred back to the Public Prosecutor's Office of the Confederation for further investigation within the meaning of the recitals.

3. The suspended case does not remain pending before the Criminal Court of the Federal Criminal Court and the proceedings of the case are referred to the Public Prosecutor's office of the Confederation.

4. No costs shall be incurred nor shall expenses be awarded in respect of this decision.

On behalf of the Criminal Court of the Federal Criminal Court

The presiding judge (signature)　　　　　　　The Clerk (signature)

-16-

**Distribution (judicial act)**
— Office of the public prosecutor of the Confederation, Ms. Graziella De Falco Haldemann, Federal Prosecutor, route de Chavannes 31, PO BOX, 1001 Lausanne
— Mr. Marc Engler, Baumgartner Machler Rechtsanwâlte AG, Leiwenstrasse 2, PO BOX, 8022 Zurich
— Mr. Daniel U. Walder, Walder Hâusermann Rechtsanwâlte AG, Freiestrasse 204, PO BOX, 8032 Zurich
— Mr. Lucius Richard Blattner, Tethong Blattner AG, Selnaustrasse 6, 8001 Zurich
— Mr. Peter Bettoni, Anwaltsbüro Bettoni & Partner, Hermann Götz-Strasse 21, PO BOX 2290, 8401 Winterthur
 Mr. Jean-Marc Carnicé, rue Jacques-Balmat 5, PO BOX 5839, 1211 Genève 11
— Mr. Alec Reymond, @lex avocats, rue de Contamines 6, 1206 Genève Mr. Jan Berchtold, Bachmann Rechtsanwâlte AG, PO BOX, 8027 Zurich

Copy for information
— Complaints Court of the Federal Criminal Court *(brevi manu)*

**Appeal before the Complaints Court of the Federal Criminal Court**

An appeal against the ordinances, decisions and proceedings of the Criminal Court of the Federal Criminal Court as a court of first instance, except for decisions of the Director of procedure, may be filed in writing and substantiated **within 10 days** before the Complaints Court of the Federal Criminal Court (art. 393 §. 1 let. b and art. 396 §. 1 CCP; art. 37 § 1 LOAP).

The appeal may be lodged on the following grounds: violation of the law, including excess and abuse of discretion, denial of justice and undue delay, incomplete or erroneous establishment of facts and untimeliness (art. 393, § 2 CCP).

Federal Criminal Court
**2 5 SET. 2019**
VERSAND EXPEDITION / SPEDIZIONE

# Park Evaluations

Certification

**Park Evaluations**

TRANSLATION CERTIFICATION:        September 27, 2019

This is to certify that the enclosed French to English translation (Park Case #187135) was made under my personal supervision by a qualified translator who is fluent in both languages, and that to the best of my knowledge and understanding is a true and complete rendition of the corresponding original document.

*Howard Borenstein*
_____
Howard Borenstein
Case Manager

Park Case #187135

*3000 Marcus Avenue, Suite 1E6, Lake Success, NY 11572*
*Phone: (212) 581-8877 – Fax: (212) 581-8875*